1

2

3

4

5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7 CYCALONA GOWEN,                              )
                                              )       2:08-cv-01581-RCJ-RJJ
8              Plaintiff,                      )
                                              )
9       vs.                                    )       **ORDER**
                                              )
10 TILTWARE LLC; FULL TILT POKER;             )
   POCKET KINGS LIMITED; POCKET KINGS         )
11 CONSULTING, LIMITED; KOLYMA                )
   CORPORATION; TILTPROOF, INC.;              )
12 RAYMOND BITAR, an individual; HOWARD       )
   LEDERER, an individual; ANDREW BLOCH,      )
13 an individual; PHILLIP IVEY, an individual;)
   CHRISTOPHER FERGUSON, an individual;       )
14 JOHN JUANDA, an individual; PHILLIP        )
   GORDON, an individual; ERICK LINDGREN,     )
15 an individual; ERIK SEIDEL, an individual; )
   JENNIFER HARMAN-TRANIELLO, an              )
16 individual; MICHAEL MATUSOW, an            )
   individual; ALLEN CUNNINGHAM, an           )
17 individual; GUS HANSEN, an individual; and )
   PATRICK ANTONIOUS, an individual,          )
18                                             )
               Defendants.                    )
19 _____)

20        The present cause of action arises out of an alleged oral agreement between Plaintiff

21 Cycalona Gowen and Defendant Tiltware LLC, its affiliates, and alleged shareholders or officers.

22 Gowen claims she kept her end of the bargain, but that Tiltware and the other Defendants did not.

23 As a result, Gowen claims she is owed $40 million in damages.  Now before the Court is a Motion

24 to Dismiss filed by Tiltware and the other Defendants.  (#72).  The Court has considered the

1 | motions, briefs, pleadings, and oral argument on behalf of all parties and grants the Defendants'
2 | Motion to Dismiss.

3 | **I.     FACTS**

4 |       Plaintiff Cycalona Gowen is a professional poker player and television celebrity.  Defendant
5 | Tiltware LLC,  a California limited liability company, develops software for and consults Full Tilt
6 | Poker ("FTP"), a separate legal entity that is well known in the poker industry.  Defendant Raymond
7 | Bitar is Titlware's chief executive officer, chief financial officer, and director.

8 |       In April 2004, Gowen alleges that Bitar, acting on behalf of Tiltware, had a telephone
9 | conversation with Gowen during which Bitar offered Gowen a 1% ownership interest in Tiltware
10 | and its affiliated companies (the "Agreement").  In exchange, Gowen agreed to become a "celebrity
11 | representative" for FTP to promote the FTP brand name.  Their Agreement also allegedly required
12 | Gowen to join "Team Full Tilt" with several other poker players, including Defendants Lederer,
13 | Bloch, Ivey, Ferguson, Juanda, Gordon, Lindgren, and Seidel.

14 |       According to Gowen, in April 2004, she and the other Team Full Tilt members attended a
15 | meeting at the Golden Nugget Casino in Las Vegas, Nevada.  At that meeting, Lederer, who
16 | conducted the meeting, allegedly informed all individuals who were present that they would receive
17 | a 1% ownership interest in Tiltware, FTP and all of their affiliated companies, including Pocket
18 | Kings, Consulting, Kolyma, and Tiltproof (collectively, "the Companies"), in return for their
19 | participation on Team Full Tilt and their promotion of the FTP brand.  Gowen alleges that the Team
20 | Full Tilt members ratified the statements made by Bitar during the Golden Nugget meeting and that
21 | she relied upon the representations made at that meeting that she had an agreement with Tiltware.

22 |       For the following five years, Gowen alleges that she complied with the Agreement between
23 | herself and Tiltware.  Her compliance included actions such as wearing FTP merchandise to all
24 | poker tournaments, permitting FTP to customize her website to reflect her membership in Team Full
     | Tilt, allowing herself to be publicly featured as a member of Team Full Tilt, and not pursuing other

1   opportunities during the period of the alleged Agreement.  Despite her alleged compliance with the

2   Agreement, Gowen alleges she has not received any payment for the performance of her obligations

3   under the Agreement.

4         Gowen alleges that beginning in May 2007, all members of Team Full Tilt except for herself

5   began receiving payments under the Agreement.  Upon learning of such payments, she began to

6   demand payment for what she was owed under the Agreement, but to no avail.  In November 2007,

7   she alleges that Lederer offered to pay her $250,000 for her past performance, which she refused.

8   A year later, Gowen was informed that she was no longer a member of Team Full Tilt.

9         In November 2008, Gowen filed the present cause of action.  (Docket Entry #1).  She has

10  since amended the original Complaint.  (#56).  The First Amended Complaint ("FAC") alleges

11  twelve causes of action against nineteen defendants, including FTP, Tiltware, Tiltware's alleged

12  affiliated entities, and the individual members of Team Full Tilt (collectively, "the Tiltware

13  Defendants").  Gowen is asking the Court to award her $40 million in damages, a figure based upon

14  1% of the approximate value of Tiltware and its alleged affiliated entities.  The Tiltware Defendants

15  have now filed a Motion to Dismiss the First Amended Complaint under Rule 12(b)(6) of the Federal

16  Rules of Civil Procedure.  (#72).

17  **II.    LEGAL STANDARD**

18        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

19  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what

20  the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

21  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails

22  to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the

23  complaint's sufficiency.  *See North Star Int'l. v. Arizona Corp. Comm'n*., 720 F.2d 578, 581 (9th

24  Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim,

dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally

1  cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127

2  S.Ct. 1955, 1964 (2007).  In considering whether the complaint is sufficient to state a claim, the

3  court will take all material allegations as true and construe them in the light most favorable to the

4  plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is

5  not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact,

6  or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

7  2001).

8      "Generally, a district court may not consider any material beyond the pleadings in ruling on

9  a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint

10  may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

11  F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are

12  alleged in a complaint and whose authenticity no party questions, but which are not physically

13  attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

14  converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d

15  449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial

16  notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.

17  1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to

18  dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.

19  Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

20      If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave

21  to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,]

22  dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . .

23  . the amendment, [or] futility of the amendment . . . ."  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371

24  U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies

1  of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d

2  655, 658 (9th Cir. 1992).

3  **III.    BREACH OF CONTRACT**

4      **A.    Sufficiency of Pleading**

5          Gowen alleges that the Tiltware Defendants breached the oral Agreement that she made with

6  Bitar during their April 2004 telephone conversation. "A cause of action for damages for breach of

7  contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or

8  excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."

9  *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, n. 6, 11 Cal.Rptr.3d

10 412 (2004) (citation omitted).[1]

11         The Tiltware Defendants argue that Gowen has failed to sufficiently allege the required

12 elements of her breach of contract claim. Specifically, they argue that Gowen has failed to allege

13 the specific terms of the Agreement, namely the obligations that she was required to perform under

14 the Agreement in return for her 1% ownership interest in the Companies. California law may control

15 this Court's decisions as to the substance of the alleged contract, but federal law controls the

16 procedure governing this litigation. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1064 (9th Cir.

17 2003) (citing *Hanna v. Plumer*, 380 U.S. 460, 473, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)).

18         Fed. R. Civ. Pro. 8(a) sets forth the procedures for pleading in a complaint, which require that

19 a plaintiff give the defendant fair notice of the grounds for the claim. Gowen has alleged the

20 existence of an oral contract between herself and Tiltware. She alleges that in April 2004, the CEO

21 of Tiltware promised her a 1% ownership interest in the Companies if she agreed to be a celebrity

22 representative for FTP and help promote its brand name. (#56, ¶¶ 61, 65). Gowen alleges that for

23  ─────────────

24         [1]The Tiltware Defendants have suggested that the alleged oral Agreement at issue in this case is to be
construed under California law, perhaps because Tiltware is a California LLC. Gowen has not argued to the
contrary. The Court has no reason to believe that the Agreement should be construed under any other state's laws.
Therefore, for purposes of this Motion, the Court will construe the Agreement in accordance with California law.

1  the following four or five years, she performed her obligations under the Agreement. (*Id.* at ¶¶ 74,

2  84, 91). Gowen alleges that Tiltware breached the Agreement by failing to pay her the compensation

3  that she was due. (*Id.* at ¶¶ 79, 84, 92).

4  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

5  factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

6  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

7  not do." *Bell Atlantic Corp*., 127 S.Ct. at 1964–65. "Factual allegations must be enough to raise a

8  right to relief above the speculative level, on the assumption that all the allegations in the complaint

9  are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim

10  to relief that is plausible on its face." *Id*. at 1974.

11  Gowen has only alleged that the Agreement required Tiltware to pay her a 1% ownership

12  interest in the Companies and that the Agreement required her to be a celebrity representative for the

13  FTP brand. Gowen must allege the terms of the Agreement with more specificity. She does not

14  allege what actions she was required to perform to successfully function as a celebrity representative.

15  She does not adequately allege the nature of the 1% ownership interest owed to her, namely in which

16  exact companies or affiliates she would have a 1% ownership interest, whether the 1% ownership

17  interest reached other entities that were to be formed at a future date, or how or when Tiltware would

18  be required to pay her the 1% ownership interest. To put Tiltware on notice of her breach of contract

19  claim against Tiltware, Gowen needs to amend the First Amended Complaint and allege more facts

20  as to the nature and terms of the Agreement or confess that there were no such further terms.

21  **B.    Alter Ego Theory**

22  As to the other Defendants, Gowen's breach of contract claim is problematic in its breadth.

23  She is not simply asserting breach of contract against Tiltware, but against all nineteen Defendants,

24  which includes all of Tiltware's affiliated companies and the individuals who played on Team Full

Tilt with Gowen. But her allegations do not justify such a wide-reaching claim. She alleges that

1    Bitar made the Agreement with her, in his capacity as CEO of Tiltware. (*Id.* at ¶ 61). Gowen does

2    not allege that the other defendants were on the phone with Bitar and Gowen negotiating the

3    Agreement, or that the Agreement represented that the other defendants were entering into the

4    Agreement with Gowen, in partnership with Bitar and Tiltware. To the contrary, as to the individual

5    Defendants, her allegations suggest that they were in the same position as she was, entering into an

6    agreement with Bitar and Tiltware to participate on Team Full Tilt.

7         Gowen responds that the other Defendants are liable for breach of contract based upon an

8    alter ego theory. Gowen does not address the basis for liability of the other Companies, but focuses

9    her attention on the liability of the individual Defendants. Gowen contends that, as to the individual

10   Defendants, they were all present at the Golden Nugget meeting where they ratified the Agreement

11   and thereby "participated in and agreed to breach Gowen's ownership contract, and intended to cause

12   her injuries." (#83 at 7). Because they were officers, members, directors, or owners of Tiltware,

13   Gowen argues they should be liable for participating with Tiltware in the wrongful breach of

14   contract.[2]

15        Usually, the members of a California limited liability company cannot be personally liable

16   on a contract signed on behalf of the limited liability company. *See* Cal. Corp.Code § 17101(a)

17   (stating "no member of a limited liability company shall be personally liable under any judgment of

18   a court for any . . . liability of the limited liability company, whether that liability or obligation arises

19   in contract, tort, or otherwise, solely by reason of being a member of the limited liability company").

20   This rule, however, is not absolute.

21

22

23   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

     [2] The Tiltware Defendants have not presented any authority stating that an alter ego theory cannot be based
     on contractual liability. Some jurisdictions expressly recognize that contractual liability can be grounded in an alter
24   ego theory. *See Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 679 n. 16 (6th Cir. 2006)
     ("[t]he alter ego doctrine and its criteria are applicable to impose substantive liability whether that liability is in
     causes of action in tort, in contract, or both . . . .").

1
2
3
4

> While generally members of a limited liability company are not personally liable for judgments, debts, obligations, or liabilities of the company "solely by reason of being a member" (Corp.Code. § 17101, subd. (a)), they are subject to liability under the same circumstances and to the same extent as corporate shareholders under common law principles governing alter ego liability and are personally liable under the same circumstances and extent as corporate shareholders.

5   *People v. Pac. Landmark*, 129 Cal.App.4th 1203, 1212, 29 Cal.Rptr.3d 193 (Cal. Ct. App. 2005)

6   (internal alterations omitted).

7        Thus, "[o]rdinarily, a corporation is regarded as a legal entity separate and distinct from its

8   stockholders, officers and directors.  Under the alter ego doctrine, however, where a corporation is

9   used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a

10  statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the

11  corporate entity and treat the corporation's acts as if they were done by the persons actually

12  controlling the corporation." *Robbins v. Blecher*, 52 Cal.App.4th 886, 892, 60 Cal.Rptr.2d 815 (Cal.

13  Ct. App. 1997).  "Shareholders of a corporation are not normally liable for its torts, but personal

14  liability may attach to them through application of the 'alter ego' doctrine . . ., or when the

15  shareholder specifically directed or authorized the wrongful acts." *Wyatt v. Union Mortgage Co.*,

16  24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 598 P.2d 45 (1979).  California recognizes alter ego

17  relationships, permitting a corporation's liabilities to be imposed on an individual or entity, when

18  two conditions are satisfied: (1) "there is such a unity of interest and ownership that the individuality,

19  or separateness, of the said person and corporation has ceased," and (2) "an adherence to the fiction

20  of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *Wood*

21  *v. Elling Corp.*, 20 Cal.3d 353, 365 n. 9, 142 Cal.Rptr. 696, 572 P.2d 755 (1977).

22        In *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101 (C.D. Cal. 2003), the court

23  explained, however, that "[c]onclusory allegations of 'alter ego' status are insufficient to state a

24  claim.  Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well

as facts supporting each." *Id*. at 1116.  Gowen does not even make a conclusory recitation of the

1    elements of alter ego liability.  She does not allege that treating the individual defendants separate

2    from Tiltware and the Companies would perpetrate fraud or injustice.  She merely alleges that they

3    had the same agreement with Tiltware, they were present at the Golden Nugget meeting where the

4    Agreement was discussed, and that they participated with her on Team Full Tilt.  Under such facts,

5    Gowen cannot state an alter ego claim in order to overcome a motion to dismiss.  In its present form,

6    the First Amended Complaint only pleads a cognizable breach of contract claim against Tiltware.

7            In addition to the individual defendants, she is pursuing her breach of contract claim against

8    any company that is affiliated with Tiltware or FTP, such as Pocket Kings, Consulting, Kolyma, and

9    Tiltproof.  (#56, ¶ 32).  A parent or affiliated corporation cannot be liable for the contractual

10   obligation of a subsidiary or affiliate, unless it is exercising complete domination and control in the

11   matter.  *Computersearch Corp. v. ECL Industries, Inc*., 142 A.D.2d 961, 530 N.Y.S.2d 386 (N.Y.

12   App. Div. 1988).  As with the individual Defendants, Gowen has not alleged an alter ego theory as

13   to each of the other named affiliates and certainly cannot do so for every possible affiliate of

14   Tiltware.  She has not alleged that there is a unity of interest or control between all of the

15   Companies.  She makes no factual allegations why these other affiliated companies would be liable

16   under the Agreement.

17           In sum, Gowen appears to be reaching too far in alleging who can be held liable under the

18   Agreement.  For these reasons, the Court will allow Gowen to amend the First Amended Complaint

19   to state a breach of contract claim against Tiltware, but will not allow her to amend the First

20   Amended Complaint to state a breach of contract claim against the other Tiltware Defendants.

21   Under the facts, she is not in a position to allege that Tiltware's affiliates or the other individual

22   Defendants exercised a unity of interest with Tiltware to an extent that would result in fraud or

23   injustice.

24

1     **C.**    **Statute of Frauds**

2         The Tiltware Defendants argue that even if there is a valid oral agreement alleged between

3 Gowen and the Tiltware Defendants, the Agreement is invalid under California's statute of frauds.

4 The statute of frauds in California bars relief where the duration of a contract exceeds one year. *See*

5 Cal. Civ.Code § 1624 (A contract is invalid if by "agreement that by its terms is not to be performed

6 within a year from the making thereof.").   The California statute of frauds has been narrowly

7 construed; it only prohibits enforcement of contracts that cannot under any circumstances be

8 performed within one year. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 671 (1988).  The statute

9 of frauds does not apply, for example, to an employment agreement of indefinite duration because

10 the employment could be completed within one year. *Id.*

11         Gowen alleges that the Agreement granted her a 1% interest in Tiltware, FTP, Pocket Kings,

12 Consulting, Kolyma, Tiltproof, and all of their parent companies, subsidiaries, unincorporated

13 divisions, and affiliated corporations.  (#56, ¶ 28).   She also alleges that one of these companies,

14 Pocket Kings, was not formed until 2007.  (*Id.* at ¶ 32).   Because she entered into the Agreement

15 with Tiltware in April 2004, Tiltware's end of the bargain to grant her a 1% ownership interest in

16 a company that would not even be formed for several years could not have under any circumstances

17 been performed within one year of executing the Agreement.

18         Because the First Amended Complaint is ambiguous as to the nature of the promised 1%

19 ownership interest, namely as to which companies that ownership interest was intended to reach, the

20 Court draws no legal conclusion as to the validity of the Agreement under the statute of frauds at this

21 stage.   Nevertheless, if Gowen chooses to amend the First Amended Complaint and allege that she

22 was promised a 1% ownership interest in entities that were yet to be formed for years into the future,

23 then her amended breach of contract claim will be vulnerable under the statute of frauds.   In her

24 response brief, Gowen raises equitable estoppel and part or full performance, which doctrines can

1  preclude the applicability of the statute of frauds, but until and unless Gowen amends the First

2  Amended Complaint, the Court reserves discussion on these issues.

3        For the foregoing reasons, the Motion to Dismiss Gowen's breach of contract claim is

4  GRANTED with leave to amend as to Tiltware only.  As to the other Tiltware Defendants, the

5  Motion to Dismiss Gowen's breach of contract claim is GRANTED without leave to amend.

6  **IV.    BREACH OF FIDUCIARY DUTY**

7        The Tiltware Defendants argue that Gowen fails to sufficiently plead a claim for breach of

8  fiduciary duty.  Gowen has pled this cause of action against the individual Defendants only. The

9  elements for this cause of action require (1) the existence of a fiduciary relationship; (2) a breach of

10 that duty; and (3) damages proximately caused by such a breach.  *See Cascade Investments, Inc. v.*

11 *Bank of America*, N.A., S.A., No. CV-N-99-559, 2000 WL 1842945, at *3 (D.Nev. Sept. 29, 2000)

12 (citing *Fidelity & Deposit Co. v. Curtis Day*, 1993 WL 128073 (N.D. Cal. 1993).

13       Gowen alleges that the individual Defendants are majority shareholders in the Companies

14 and that they violated their fiduciary duty to Gowen, as a minority shareholder.  Certain jurisdictions

15 have recognized a fiduciary duty owed by majority to minority shareholders.  *See, e.g.*, *Matter of*

16 *Reading Co.*, 711 F.2d 509, 517 (3rd Cir. 1983) (concluding that under Delaware law, not only do

17 directors and officers "stand in a fiduciary relationship to their corporation and stockholders[,]" but

18 "a majority shareholder, or a group of shareholders who combine to form a majority, has a fiduciary

19 duty to the corporation and to its minority shareholders if the majority shareholder dominates the

20 board of directors and controls the corporation."); *Stephenson v. Drever*, 16 Cal.4th 1167, 1178, 69

21 Cal.Rptr.2d 764, 947 P.2d 1301 (Cal. 1997) (recognizing fiduciary duty under California law);

22 *Noakes v. Schoenborn*, 116 Or.App. 464, 471–72, 841 P.2d 682, 686-87 (Or. 1992) (recognizing

23 fiduciary duty under Oregon law).  At least one federal district judge in this District has held that the

24 Nevada Supreme Court would find a fiduciary duty owed by majority to minority shareholders in

certain limited circumstances. *See Simon v. Mann*, 373 F.Supp.2d 1196, 1199–1200 (D. Nev. 2005).

1    Nevertheless, there are a variety of fiduciary duties that a majority shareholder might owe

2    to a minority shareholder.  For example, a majority shareholder may owe a fiduciary duty "not to

3    misuse his power by promoting his personal interests at the expense of corporate interests."  *U. S.*

4    *v. Byrum*, 408 U.S. 125, 137, 92 S.Ct. 2382 (1972).  Majority shareholders may owe fiduciary duties

5    to minority shareholders to use their ability "to control the corporation in a fair, just and equitable

6    manner."  *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 108, 81 Cal.Rptr. 592, 460 P.2d 464 (1969).

7    A majority shareholder may owe a fiduciary duty to other shareholders to not trade securities on the

8    basis of material nonpublic information.  *S.E.C. v. Clark*, 915 F.2d 439, 443 (9th Cir. 1990) (citing

9    *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).  "Under common

10   law, majority shareholders owe a fiduciary duty to minority shareholders who are squeezed out in

11   a transaction."  *Lewis v. Chiles*, 719 F.2d 1044, 1051 (9th Cir. 1983).

12       Gowen does not allege the nature of the fiduciary duty that the individual Defendants owed

13   her or how they breached that duty.  The individual Defendants cannot be on notice of the claim

14   against them if they are not even apprised of what duty they owed Gowen.  For the foregoing

15   reasons, the Court holds that Gowen has not sufficiently pled a cause of action for breach of fiduciary

16   duty.  The Motion to Dismiss Gowen's breach of fiduciary duty claim is GRANTED without leave

17   to amend as the opposition to this Motion advances no plausible theory of such a duty.

18   **V.       BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

19       A cause of action for breach of the covenant of good faith and fair dealing can lie in contract

20   or tort.  "It is well established that all contracts impose upon the parties an implied covenant of good

21   faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the

22   disadvantage of the other."  *Nelson v. Heer*, 123 Nev. 26, 163 P.3d 420, 426–27 (2007).  Where one

23   party to a contract "deliberately countravenes the intention and spirit of the contract, that party can

24   incur liability for breach of the implied covenant of good faith and fair dealing."  *Hilton Hotels v.*

*Butch Lewis Productions*, 107 Nev. 226, 808 P.2d 919, 922–23 (1991).

1    Gowen's cause of action against the Tiltware Defendants for breach of covenant of good faith

2   and fair dealing, as currently pled, arises out of the Agreement.  For the reasons explained above,

3   however, Gowen cannot pursue a breach of contract claim against any of the Defendants except

4   Tiltware.  She has not adequately alleged that any of the Defendants other than Tiltware were parties

5   to the Agreement.  Even as to Tiltware, she still needs to amend the First Amended Complaint.  As

6   a result, there is no valid Agreement as currently pled in the First Amended Complaint and thus no

7   claim for a breach of the covenant of good faith and fair dealing arising out of the Agreement.

8    For these reasons, the Motion to Dismiss Gowen's breach of covenant of good faith and fair

9   dealing claim is GRANTED with leave to amend as to Tiltware.  If Gowen does amend, she must

10  allege with more specificity how Tiltware breached its covenant of good faith and fair dealing.  As

11  to the other Tiltware Defendants, the Motion to Dismiss Gowen's breach of contract claim is

12  GRANTED without leave to amend.

13  **VI.   FRAUD/NEGLIGENT REPRESENTATION**

14   Gowen's fourth and twelfth causes of action are for fraud and negligent representation,

15  respectively.  Under Nevada law, "a claim for negligent misrepresentation requires a plaintiff to

16  plead: 1) a representation that is false; 2) that the representation was made in the course of the

17  defendant's business or in any action in which he has a pecuniary interest; 3) the representation was

18  for the guidance of others in their business transactions; 4) the representation was justifiably relied

19  upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant

20  failed to exercise reasonable care or competence in obtaining or communicating the information."

21  *G.K. Las Vegas Limited Partnership v. Simon Property Group, Inc*., 460 F.Supp.2d 1246, 1262

22  (D.Nev. 2006).  Intentional misrepresentation or fraud is established by three factors: "(1) a false

23  representation that is made with either knowledge or belief that it is false or without a sufficient

24  foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance."

*Nelson*, 163 P.3d at 426.  Both causes of action are grounded in fraud.

1      Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or

2  mistake, a party must state with particularity the circumstances constituting fraud or mistake."  A

3  pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the

4  defendant can prepare an adequate answer from the allegations.  *See Neubronner v. Milken*, 6 F.3d

5  666, 671 (9th Cir. 1993).  In addition, allegations of fraud must be accompanied by "the who, what,

6  when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

7  1106 (9th Cir. 2003).  *See also*, *Lancaster Cmty. Hosp. v. Antelope Valley Dist.*, 940 F.2d 397, 405

8  (9th Cir. 1991) (Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and

9  manner of each act of fraud, plus the role of each defendant in each scheme.").  Rule 9(b)'s

10  heightened pleading requirements indisputably apply to an intentional misrepresentation claim, but

11  even as to a negligent misrepresentation claim, the majority of the district courts in this Circuit who

12  have addressed this issue have held that negligent misrepresentation claims are in fact subject to Rule

13  9(b)'s heightened pleading requirements.  *See Deitz v. Comcast Corp.*, No. 06-6352, 2006 WL

14  3782902, at *6 (N.D. Cal. Dec. 21, 2006) (collecting cases); *Meridian Project Sys., Inc. v. Hardin*

15  *Constr. Co.*, 404 F.Supp.2d 1214, 1219 (E.D. Cal. 2005) (stating that "[i]t is well-settled in the Ninth

16  Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s

17  particularity requirement").

18      The First Amended Complaint is fatally deficient under Rule 9(b)'s standards for the

19  negligent and intentional misrepresentation claims.  Gowen alleges the same facts as to both claims.

20  She alleges that during the April 2004 telephone conversation, Bitar promised to pay her 1%

21  ownership interest in the Companies knowing all the time that he would not carry out that promise.

22  She also alleges that he told her that he would memorialize the Agreement in writing, which she

23  alleges he never did.  As a result of her reliance upon Bitar's false representations, she alleges that

24  she was injured.   Alternatively, she alleges that Bitar was negligent in making this false

representation, which was made in the course of his business.

1        Gowen does present some factual allegations as to Bitar, but still falls short of Rule 9(b)'s

2  heightened bar.  Gowen needs to provide more specifics as to the misrepresentations that Bitar

3  allegedly made to her.  She alleges he promised a 1% ownership interest in the Companies.  But for

4  reasons explained above, the alleged Agreement is vulnerable if she is alleging that Bitar promised

5  her a 1% ownership interest in Tiltware as well as all of its future affiliated companies.  She also

6  does not allege what representations that he made to her as to what Bitar expected in return for the

7  1% ownership interest or whether there was a present agreement even without the further writing.

8        As to the other defendants, Gowen has also failed to comply with Rule 9(b)'s heightened

9  pleading requirements.  Other than Lederer, she does not identify any other Defendants by name,

10  allege the content of any false representations, or in what context they made them.  The only other

11  individual defendant she identifies is Lederer but her allegations as to him are still incomplete.  Rule

12  9(b) does not allow a fraud plaintiff to make general allegations of misrepresentation applicable to

13  all.  Rule 9(b) "require[s] plaintiffs to differentiate their allegations when suing more than one

14  defendant . . . and inform each defendant separately of the allegations surrounding his alleged

15  participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).  Although

16  the complaint need not identify false statements made by each and every individual, "Rule 9(b) does

17  not allow a complaint to merely lump multiple defendants together but requires plaintiffs to . . .

18  inform each defendant separately of the allegations surrounding his alleged participation in the

19  fraud."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

20        Based upon the foregoing, the Court concludes that Gowen has not satisfied the heightened

21  pleading requirements of Rule 9(b).  The Motion to Dismiss Gowen's fourth and twelfth causes of

22  action for fraud and negligent representation is GRANTED with leave to amend as to Bitar and

23  Lederer, and GRANTED without leave to amend as to the remaining Tiltware Defendants.

24

## VII.   ACCOUNTING

An accounting is an action in equity.  "An accounting cause of action is equitable in nature, and may be sought where . . . the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."  *Civic Western Corp. v. Zila Industries, Inc*., 66 Cal.App.3d 1, 14 (1977) (citation and quotation marks omitted).  "A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.  An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain."  *Id*.

The Tiltware Defendants move to dismiss the fifth cause of action for an accounting against all Defendants aside from Tiltware.  If Gowen is entitled to 1% of the ownership interest of the Companies, Gowen's request for an accounting should be directed at Tiltware.  Tiltware should be responsible for evaluating its worth and that of the Companies.  It makes no sense to have the individual Defendants, simply because they are alleged shareholders in the Companies, to each produce an accounting of the Companies' or their own value.  Therefore, the Motion to Dismiss Gowen's accounting claim against all Tiltware Defendants except Tiltware is GRANTED without leave to amend.

## VIII.   PROMISSORY ESTOPPEL

Gowen's sixth cause of action is for promissory estoppel.  Promissory estoppel holds that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  *Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth*., 23 Cal.4th 305, 96 Cal.Rptr.2d 747, 1 P.3d 63, 66 (2000) (quoting Restatement (Second) of Contracts § 90). *See also*, *American Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 85 Nev. 350, 455 P.2d 39 (Nev. 1969) (relying upon Restatement of Contracts § 90).

1    In the First Amended Complaint, Gowen alleges that Bitar made an oral promise to pay her

2   a 1% ownership interest to induce her to agree to act as a celebrity representative, that she relied on

3   that promise to her detriment, and that she has suffered damage.  For the reasons explained above,

4   however, she still needs to make more specific factual allegations as to Bitar's representations and

5   the alleged Agreement that was made over the telephone.  In the First Amended Complaint's current

6   form, the Court cannot properly evaluate the nature of the promise that Bitar made to Gowen.

7   Gowen may also have a promissory estoppel claim as to Lederer upon amendment, but she needs to

8   allege more specifically the nature of the promise and misrepresentations made by Lederer before

9   this Court can decide if she has a promissory estoppel claim against Lederer.  For these reasons, the

10  Motion to Dismiss Gowen's promissory estoppel cause of action is GRANTED with leave to amend

11  as to Tiltware, Bitar, and Lederer and GRANTED without leave to amend as to the remaining

12  Tiltware Defendants.

13  **IX.    SPECIFIC PERFORMANCE**

14    Specific performance is an equitable remedy.  Action for damages for breach is an action at

15  law.  "Ordinarily, of course, equitable relief will not be awarded where complete relief by an action

16  at law is available."  *United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting*, 76

17  Nev. 189, 211, 351 P.2d 965 (Nev. 1960).  "[W]here, as here, the primary right of a party is legal in

18  its nature, as distinguished from equitable, and one for which the law affords some remedy, as here

19  damages by way of compensation for breach of contract, a proper exercise of the equitable

20  jurisdiction will not give equitable relief in any case where the legal remedy is full and adequate and

21  does complete justice."  *Morrison v. Land*, 169 Cal. 580, 147 P. 259 (1915); 5 Witkin, Cal.

22  Procedure, Pleading, § 759 at 215 (4th ed. 1997).

23    Gowen is principally seeking a legal remedy for $40 million in damages.  She may have a

24  remedy at law for breach of contract if the First Amended Complaint is properly amended.  Of

course, if the Court holds that she cannot plead a breach of contract claim, then her relief would

1   principally rely on equity.  Specific performance is within the discretion of the district court.  *Cohen*

2   *v. Rasner*, 97 Nev. 118, 624 P.2d 1006 (Nev. 1981).  Nevertheless, Gowen needs to properly plead

3   a specific performance cause of action.  Specific performance is a valid claim where a plaintiff

4   alleges the following:

5           (1) A specifically enforceable type of contract, sufficiently certain in its terms. (2)
            Adequate consideration, and a just and reasonable contract. (3) The plaintiff's
6           performance, tender, or excuse for nonperformance. (4) The defendant's breach. (5)
            Inadequacy of the remedy at law.

7

8   5 Witkin, Cal. Proc., Pleading § 784, at 203–204 (5th ed.2008).

9        Gowen has not properly pled a specific performance claim.  She merely alleges that the

10  Tiltware Defendants failed to comply with the Agreement.  Even if properly pled, she would only

11  be able to plead this cause of action against Tiltware.  For these reasons, the Motion to Dismiss

12  Gowen's specific performance claim is GRANTED as to Tiltware with leave to amend and

13  GRANTED as to the other Tiltware Defendants without leave to amend.

14  **X.      DECLARATORY RELIEF**

15       Gowen seeks declaratory relief, asking the Court to determine the rights of the parties vis-a-

16  vis the Agreement.  Declaratory judgments generally serve to resolve uncertainty faced by potential

17  defendants who face threats of litigation and who may accrue legal liability while waiting for

18  potential plaintiffs to initiate a suit.  *See Societe de Conditionnement en Aluminum v. Hunter*

19  *Engineering Co., Inc.*, 655 F.2d 938 (9th Cir. 1981).  The decision whether or not to hear a

20  declaratory judgment action is left to the discretion of the federal court.  *See Leadsinger, Inc. v. BMG*

21  *Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008).  Relief may be granted so long as there is "a real and

22  substantial controversy admitting of specific relief through a decree of conclusive character, as

23  distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

24  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937).  In order for

    there to exist an actual case or controversy under the Declaratory Judgment Act, the plaintiff must

1    assert a real and reasonable apprehension that he will be subject to liability as a result of defendant's

2    actions.  *Spokane Indian Tribe v. United States*, 972 F.2d 1090 (9th Cir. 1992).

3            Here, Gowen has not alleged any ground for the Court to find any basis for a real and

4    reasonable apprehension of a lawsuit by the Tiltware Defendants.  There is no indication that the

5    Tiltware Defendants intend to sue Gowen for any claims arising out of the Agreement.  In reality,

6    the claim appears to be fundamentally one for breach of contract, despite the fact that it is styled as

7    one for declaratory relief.  A genuine declaratory judgment claim anticipates a future lawsuit brought

8    by the defendant against the plaintiff.  The purpose of allowing this anticipatory type of litigation is

9    to permit the plaintiff to demonstrate that his or her present actions do not give rise to liability.  If

10   the plaintiff is successful, he or she can proceed with that conduct without apprehension of a future

11   lawsuit from the defendant.  This is not the case here.  Gowen is not trying to fend off a future

12   lawsuit by the Tiltware Defendants.  To the contrary, Gowen claims that the Tiltware Defendants are

13   presently in breach of their contractual obligation to compensate her with the 1% ownership interest

14   in the Companies.

15           For these reasons, the Motion to Dismiss the declaratory relief claim is GRANTED without

16   leave to amend.

17   **XI.    RIGHT OF PUBLICITY**

18           Gowen's tenth cause of action alleges that the Tiltware Defendants violated her right of

19   publicity under NRS 597.810.  NRS 597.810 prohibits "[a]ny commercial use of the name, voice,

20   signature, photograph or likeness of another by a person, firm or corporation *without first having*

21   *obtained written consent* for the use . . . ."  NRS 597.810 (emphasis added).  In her First Amended

22   Complaint, however, Gowen admits that she authorized the Tiltware Defendants to use her likeness.

23   (#56 at ¶ 74(c) ("Plaintiff permitted Defendants to use her likeness . . . .").  Based upon this

24   admission, Gowen cannot plead a right of publicity claim because that claim requires that the

     Tiltware Defendants used her likeness *without* Gowen's consent.  *See American Title Ins. Co. v.*

1   *Lacelaw Corp*., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial

2   orders, unless amended, are considered judicial admissions conclusively binding on the party who

3   made them.").

4        For this reason, the Motion to Dismiss Gowen's right of publicity cause of action is

5   GRANTED without leave to amend.

6   **XII.   UNJUST ENRICHMENT/QUANTUM MERUIT**

7        Gowen's tenth and eleventh causes of action are for unjust enrichment and quantum meruit.

8   Although Gowen has pled these claims separately, they are essentially the same claim. *See Asphalt*

9   *Products Corp. v. All Star Ready Mix, Inc*., 111 Nev. 799, 802, 898 P.2d 699 (1995) (treating unjust

10  enrichment and quanrum meruit interchangeably). "Unjust enrichment is the unjust retention of a

11  benefit to the loss of another, or the retention of money or property of another against the

12  fundamental principles of justice or equity and good conscience." *Nevada Industrial Dev. v.*

13  *Benedetti*, 103 Nev. 360, 363 n. 2, 741 P.2d 802, 804 n. 2 (1987). The essential elements of unjust

14  enrichment "are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant

15  of such benefit, and acceptance and retention by the defendant of such benefit." *Unionamerica Mtg.*

16  *v. McDonald*, 97 Nev. 210, 212, 626 P.2d 1272, 1273 (1981). An unjust enrichment claim cannot

17  be predicated upon an express agreement. *See Leasepartners Corp. v. Robert L. Brooks Trust*, 942

18  P.2d 182, 187 (1997) ("An action based on a theory of unjust enrichment is not available when there

19  is an express, written contract, because no agreement can be implied when there is an express

20  agreement."). The proper measure of damages in unjust enrichment or quantum meruit suits is the

21  "reasonable value of [the] services." *Flamingo Realty v. Midwest Development*, 110 Nev. 984, 987,

22  879 P.2d 69, 71 (1994) (quoting *Morrow v. Barger*, 103 Nev. 247, 252, 737 P.2d 1153, 1156

23  (1987)).

24        Gowen alleges that she rendered valuable services to the Companies by participating on the

Team Full Tilt and promoting the FTP brand. Of course, these services were for the benefit of

1    Tiltware and the Companies, not the individual Defendants.  Furthermore, in the First Amended

2    Complaint's current form, it is unclear what benefits she was expected to confer upon Tiltware.  She

3    alleges certain actions she took that may have benefitted Tiltware, but what is more important is

4    what she was expected to do, under the terms of the Agreement, in return for the 1% ownership

5    interest. Therefore, Gowen cannot pursue this cause of action until she amends the First Amended

6    Complaint.  Even as amended, she can only allege a cause of action for unjust enrichment or

7    quantum meruit against Tiltware.  She does not need to also bring the cause of action against

8    Tiltware's shareholders or affiliates.  Therefore, the Motion to Dismiss Gowen's tenth and eleventh

9    causes of action for unjust enrichment and quantum meruit is GRANTED with leave to amend as

10    to Tiltware and GRANTED without leave to amend as to the remaining Tiltware Defendants.

11                                         **CONCLUSION**

12        Based on the foregoing, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss

13    is GRANTED with and without leave to amend, as outlined above in the Court's opinion.  (#72).

14    Plaintiff Gowen shall have fifteen (15) days from the date of this Order to file a Second

15    Amended Complaint.

16        DATED:        May 18, 2009

17

18                                               _____

19                                      Robert C. Jones
                                            United States District Judge

20

21

22

23

24